# Warten *v.* Strane.

*Statutory Detinue for Personal Property in Specie.*

1. *Sale of part of quantity in bulk.*—A contract for the sale of one hundred barrels of corn, in a crib containing a larger quantity, nothing being done to separate the part sold from the residue, does not vest in the purchaser a title on which he can maintain detinue or trover for any part of the corn.

2. *Testimony of party as to transactions with deceased clerk or agent.* When the plaintiff's action is founded on a contract made by his clerk or agent, since deceased, the defendant can not testify as to any transaction or stipulations between himself and the deceased clerk or agent (Code, § 3058), who occupied a fiduciary relation towards his principal. (*Baldwin v. Ashby,* 54 Ala. 82, explained and limited.)

3. *Declarations of deceased agent; when admissible for principal.* When the plaintiff sues on a contract made for him by his clerk or agent, since deceased, he can not prove the contract by the declarations of the clerk or agent, unless made to him in the presence of the defendant.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by Henry Warten, against W. T. Strane, to recover "one lot of corn in the shuck, to-wit, 76 barrels, in defendant's crib nearest his dwelling, lately bought by plaintiff from defendant, of the value, to-wit, of $228, and one cotton-gin, formerly owned by A. C. Legg, and now in the gin-house on defendant's premises, of the value, to-wit, of $100, with the value of the hire or use thereof during the detention;" and was commenced on the 4th March, 1885. The defendant entered a disclaimer as to the cotton-gin, and pleaded "not guilty as to the corn men-

tioned in the plaintiff's complaint;" and the cause was tried on issue joined on this plea, the cotton-gin being struck out of the complaint. On the trial, as appears from the bill of exceptions, the plaintiff claimed the corn under a contract made for him by his deceased clerk and agent, George Gray, under these circumstances: The defendant being indebted to the plaintiff, on the 1st December, 1884, in the sum of about $700, "on general store account," plaintiff sent out his clerk and agent, said George Gray, to collect the debt, or make a settlement of it; and he claimed that, by the terms of this settlement, said account "was paid by credit for a gin, two mules, one horse, and one hundred barrels of corn in the shuck, at defendant's crib, at the rate of 60 c. per bushel, leaving a balance of $25.00 due defendant, which he afterwards took out in plaintiff's store." By the terms of this contract, according to the plaintiff's testimony, the defendant was to haul the corn to Elkmont depot; but, on a subsequent suggestion that the corn could be profitably sold at home, this stipulation was changed, and 24 barrels were delivered by defendant, on plaintiff's written orders, to third persons. The plaintiff, testifying as a witness for himself, stated that, by the terms of the contract, "the corn at the crib was to be his property; and, on cross-examination, testified that he had never seen the corn—that the trade was made for him by said George Gray, his clerk, who died last fall, but that he and the defendant, in January, 1885, talked over the trade thus made with said Gray." On objection by defendant, the court excluded from the jury "the evidence as to the trade being made by said Gray;" and the plaintiff excepted. The defendant then asked the plaintiff, "whether the corn he bought from the defendant was one hundred barrels to' itself, or part of a larger quantity;" to which he answered, "that he did not personally know whether the corn was in a lot by itself—that defendant told him, in January, 1885, that the corn was in his west crib, separated from his other corn; and that said Gray told him, when he returned from making the trade, that he bought the lot of corn in the west crib, and showed him the dimensions thereof." On objection by defendant, "the court excluded as evidence what said Gray said to plaintiff, with his description of the lot of corn;" and plaintiff excepted.

The plaintiff, further testifying for himself, stated that, "about March 1st, 1885, the defendant refused, on demand, to let him have any more corn, because plaintiff refused to credit or *run* him that year;" and he was asked, on cross-examination, "if it was not the understanding, when defendant paid off his account, that plaintiff would sell him

[Warten v. Strane.]

goods on a credit during the year 1885." The plaintiff objected to this question, "on the ground that the evidence was irrelevant, immaterial, and incompetent," and excepted to the allowance of the question; but he answered, "that there was no such understanding." The defendant, testifying as a witness for himself, stated that, in January, 1885, in an interview between him and the plaintiff, "they rehashed the trade he had made with said Gray, and plaintiff released him from taking the corn to Elkmont; and that it was his understanding with said Gray, that plaintiff would sell him goods on credit for the year 1885, if he paid up said account." The plaintiff objected to this alleged understanding with said Gray as evidence, "on the ground that it involved transactions with, or statements by plaintiff's deceased agent, George Gray, in reference to the subject-matter of this suit;" and he excepted to the overruling of his objection. The defendant testified, also, that he had never refused to let plaintiff have the corn which he bought, and that plaintiff had never made any demand on him for it, except the written orders which had been filled.

The court charged the jury, "that the only question they had to consider was, whether or not the corn bought by plaintiff from defendant was an unseparated part of a larger quantity; and that if the corn he bought was a part of, and not separated from a larger quantity, then plaintiff could not recover." The plaintiff excepted to this charge, and he now assigns it as error, together with the several rulings on evidence to which, as above stated, he reserved exceptions.

McCLELLAN & McCLELLAN, for the appellant, cited 1 Greenl. Ev. 113, 114; 32 Ala. 603; 6 Ala. 733; 7 Ala. 791; Code, § 3058; 78 Ala. 185; 73 Ala. 175; 43 Ala. 622; 19 N. Y. 330; 42 N. Y. 118; 51 N. Y. 288; 39 Conn. 413; 62 Mo. 400; 37 Maine, 414; 6 Rand. Va. 473.

MILTON HUMES, and JNO. J. TURRENTINE, contra.

SOMERVILLE, J.—1. The principle is familiar, that where there is a contract of sale of personal property, and anything remains to be done to individualize and identify the particular property intended to be sold, such as counting, weighing, measuring, or separating from a larger mass or bulk, no title passes to the purchaser, such as will maintain in his favor an action of detinue or trover. This is for the simple reason, that the particular part of the property or chattels contracted to be sold and delivered can not be ascertained by precise identification.—*Mobile Savings Bank*

*v. Fry*, 69 Ala. 348; s. c., 75 Ala. 473; *Sheally & Finn v. Edwards*, 73 Ala. 175, 180. The charge of the court, in reference to this phase of the case, was in harmony with this well-settled rule governing sales of personal property, and was free from error.

2. The court erred, however, in allowing the defendant to testify as to any transaction with, or statement by George Gray, the deceased clerk of the plaintiff, touching the alleged contract of sale in controversy. The contrary was decided, it is true, in *Baldwin v. Ashby*, 54 Ala. 82, which was a construction of section 2704 of the Revised Code of 1867. That section, however, was applicable only to suits by or against executors or administrators, so far as concerned the clause excepting a certain class of cases from its operation. The present statute is materially different, as found in section 3058 of the Code of 1876. It provides that, in all suits and proceedings other than criminal cases, "there must be no exclusion of any witness because he is a party, or interested in the issue tried, *except* that neither party shall be allowed to testify against the other, as to any transaction with, or statement by any deceased person, whose estate is interested in the result of such suit, *or when such deceased person*, at the time of such statement or transaction, acted in *any representative or fiduciary relation* whatsoever to the party against whom such testimony is sought to be introduced."—Code, 1876, § 3058. It was observed in *McCrary v. Rash*, 60 Ala. 374, 377, that this clause scarcely needed comment for a clearer understanding of its meaning, and that it provided a rule different from that declared in *Baldwin v. Ashby, supra*. Under its provisions, as the law now stands, a defendant is incompetent to testify as to any transaction with, or statement by the deceased agent of the plaintiff, unless called to testify thereto by the opposite party. For the error of the court in admitting this evidence, the judgment will necessarily be reversed.

3. So, it was equally incompetent for the plaintiff to prove the terms of the contract made between his deceased agent and the defendant, by the *ex-parte* declarations of such agent. It is only where such contract is established *aliunde* that the report of the transaction by the agent to his principal may be regarded as a part of the *res gestæ*, and admissible in favor of the principal.—*Meyer v. Hearst*, 75 Ala. 390, 394.

The fact, if such be true, that the plaintiff, when the defendant paid off his account with him, may have agreed to sell defendant goods on a credit for the ensuing year, was entirely irrelevant in this action, which is one of detinue

[Shelton v. Aultman & Taylor Co.]

brought to recover specific chattels. Neither the truth or falsity of this alleged fact could have had any effect in vesting or divesting the title of the corn claimed to have been purchased by the plaintiff from the defendant.

Reversed and remanded.