This case involves the application of a section of Alabama's version of the Uniform Fiduciary Act, Ala. Code 1975, §19-1-1 et seq. Richard L. Heffner committed suicide. His wife, Kathy S. Heffner, was appointed executrix of his estate. Richard had a life insurance policy with Fireman's Fund Insurance Company, and after his death Fireman's Fund issued a draft to Kathy Heffner in the amount of $124,514.15 as proceeds of the policy. The draft was made payable to "Kathy Stapp Heffner, Executor of the Succession of Richard L. Heffner."
Kathy Heffner deposited the draft in her account at the Cahaba Bank and Trust Company ("Cahaba"). The account was eventually depleted because checks were drawn on the account and cash withdrawals were made.
Ronald Heffner, the brother of Richard Heffner, had Kathy Heffner removed as executrix, and he was appointed successor executor by the proper Louisiana court, after alleged irregularities were discovered involving the way the estate had been handled.
When Ronald discovered that the insurance proceeds were missing, he sued Kathy Heffner, Fireman's Fund Insurance Company, Wells Fargo Bank (on which the Fireman's Fund draft had been written), and Cahaba Bank and Trust Company. Only Cahaba is involved in this appeal. The plaintiff claimed both compensatory and punitive damages from Cahaba for the alleged conversion of funds by Kathy Heffner. He claimed that Cahaba had acted either with actual knowledge that Kathy Heffner was breaching her fiduciary duty or with knowledge of such facts that it was on notice of such a breach and that its actions in paying the checks amounted to bad faith, and that Cahaba was therefore liable under Ala. Code 1975, § 19-1-9. That section provides:
 "If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, . . . the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith. (Acts 1943, No. 557, p. 544, § 9.)" (Emphasis added).
The trial judge granted Cahaba's motion for summary judgment. This appeal followed. *Page 115 
Our rule of review on summary judgment is well-settled: Summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. "If there is a scintilla of evidence which supports the position of the non-moving party, summary judgment should not be granted."Cole v. First National Bank of Tuskaloosa,485 So.2d 717, 719 (Ala. 1986).
In this case, if there is a scintilla of evidence to support the plaintiff's position, then the trial judge's grant of summary judgment was improper.
To support his contentions, the plaintiff presented two affidavits. The first was the affidavit of a former employee of the plaintiff's attorney's law firm, Nancy Osborne, who had interviewed a former head teller at Cahaba, Vicki Bradford. Bradford was also deposed, but that deposition is notpresented here, and it was not before the trial judge at thetime he made his ruling. The Osborne affidavit primarily attempted to show that Cahaba had actual knowledge that Kathy Heffner was breaching her fiduciary duty. Cahaba argues that the Osborne affidavit is not proper evidence to oppose the summary judgment motion. It argues that the affidavit is hearsay, and, therefore, not admissible in evidence as required by Ala.R.Civ.P. 56(e):
 "(e) Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and should show affirmatively that the affiant is competent to testify to the matters stated therein. . . ."
Cahaba contends that because the Osborne affidavit would not be "admissible in evidence," it should not have been considered by the trial court, and should not be considered by this Court. In rebuttal, the plaintiff presents several scenarios in which the Osborne affidavit might be admissible. This is not sufficient. We agree with Cahaba that the Osborne affidavit does not meet the requirements of Rule 56(e), because it is not based on personal knowledge and because it contains hearsay. Blantonv. Liberty National Life Insurance Co., 434 So.2d 773
(Ala. 1983). We, therefore, do not consider the Osborne affidavit as support for the plaintiff's position.
The second affidavit presented by the plaintiff related to his allegation that Cahaba knew such facts that its payments out of Kathy Heffner's account amounted to bad faith. This affidavit was given by Leonard Wertheimer, an attorney at the plaintiff's attorney's law firm. This affidavit, although it contains some legal conclusions, details the transactions on Kathy Heffner's account and would be admissible in evidence.
The plaintiff contends that the amount and number of these transactions, coupled with the names of the payees of some of the checks drawn, show that Cahaba had knowledge of such facts that its actions in paying the checks amounted to bad faith and, therefore, subjected it to liability under § 19-1-9. The plaintiff specifically points to certain checks, such as those to Weil Furs, Golbro Jewelers, and Cobb-Kirkland, an automobile dealership, to show that Cahaba should have been on notice that Kathy Heffner was breaching her fiduciary duty. We disagree.
We do not believe that the amount and number of transactions carried out on an account containing fiduciary funds, nor the mere names of payees on checks drawn on that account, are sufficient to create bad faith liability based on the bank's action in paying such checks.
The requirements of Rule 56(e), Ala.R.Civ.P., are mandatory. This Court has stated that affidavits filed in opposition to a motion for summary judgment must be based upon personal knowledge and must set forth facts to show that the evidence would be admissible as evidence to contradict the movant's evidence. MJM, Inc. v. Casualty Indemnity Exchange,481 So.2d 1136, 1140-41 (Ala. 1985). This Court will not consider statements made in affidavits that are based on hearsay, or otherwise inadmissible evidence. See, Blantonv. Liberty National Life Ins. Co., 434 So.2d 773, 775
(Ala. 1983). *Page 116 
The Osborne affidavit contains statements Osborne says were made to her during an interview with one Vicki Bradford, who was a former head teller at Cahaba. A memorandum attached to the affidavit purports to set forth the substance of the interview, but the memorandum clearly is not admissible as an exception to the hearsay rule.
Heffner, in his brief on appeal, refers to the statement made by Bradford to Osborne as, in form, an "admission," that is, as a statement made by a person who was an agent of the bank at the time of the transactions that are the subject of the lawsuit. We do not believe that the statement of Bradford is an admission against the bank, and therefore admissible as an exception to the hearsay rule, because Bradford was not an employee of the bank at the time it was made and because the statement was made more than a year after the subject account was closed at the bank. In Davey Tree Expert Co. v.Willis, 383 So.2d 529, 531 (Ala. 1980), this Court said:
 "Creel's testimony about the claimed statement by Roberts was inadmissible and was erroneously introduced. In Cone v. Ragan, 288 Ala. 352, 261 So.2d 28 (1972), this Court reaffirmed the well-recognized proposition that an agent's declaration against interest is not admissible if it relates to a past transaction. Quoting from Alabama Great Southern R.R. Co. v. Hawk, 72 Ala. 112, 47 Am. Rep. 403 (1882), the Court stated:
 " 'The rule is well established, that it is not within the scope of an agent's authority to bind his principal by admissions having reference to by-gone transactions. The only ground upon which the admissibility of an agent's declaration can be justified, is, that they must have been made while in the discharge of his duties as agent, and be so closely connected with the main transaction in issue as to constitute a part of the res gestae.'
 288 Ala. at 353, 261 So.2d at 29. On the Basis of Cone, Creel's testimony about Roberts' asserted statement was inadmissible."
In this case, moreover, plaintiff took the deposition of Vicki Bradford, but this deposition was not introduced as evidence in opposition to the motion for summary judgment. We do not know whether there was any evidence contained in the deposition that would have otherwise been admissible in opposition to the motion for summary judgment.
In his reply brief, Heffner contends that there could be several scenarios that would make the Osborne affidavit admissible. He says "that the testimony of Ms. Osborne is not hearsay because it would not be 'used to prove the truth of the matter asserted' but simply to show that the statements made by Ms. Bradford and other Bank employees were made," citingBryant v. Moss, 295 Ala. 339, 342, 329 So.2d 538
(1976). He argues that Osborne's testimony would not be used to prove the truth of the statements allegedly made by bank employees that Kathy Stapp Heffner had "two accounts" or was the "two account lady" but only to prove that the bank employees made such statements, thereby showing their knowledge and, therefore, the bank's knowledge, of her affairs. Heffner also argues that even if the Osborne affidavit is hearsay, then 1) it would be admissible because Vicki Bradford might not be "available" at the time of trial to testify, and 2) Vicki Bradford's statements were at least admissible as an admission against her pecuniary interest, since she was the "head teller" at the time, and if "the bank's errors which render it liable to plaintiff were the result of an act or omission of Ms. Bradford as 'head teller' the bank could file a third-party action against her." He also argues thatif Ms. Bradford testified at trial and denied having a conversation with Osborne, then the statements made to Osborne would be admissible to impeach her testimony. We are of the opinion that none of the arguments made by Heffner has any merit, and that the Osborne affidavit did not furnish a scintilla of evidence of a triable issue of material fact.
Heffner also contends that an affidavit given by Leonard Wertheimer, an attorney *Page 117 
in the firm which represented him, is also sufficient to prevent the granting of summary judgment in favor of the bank. We have examined this affidavit, and we are of the opinion that it does not contain a scintilla of evidence that the bank paid a check with actual knowledge that the fiduciary, Kathy Heffner, was committing a breach of her obligation as fiduciary in drawing a check. We are of the further opinion that no evidence presented in opposition to the motion for summary judgment suggested that the bank had knowledge of such facts that its action in paying checks drawn by the fiduciary would amount to "bad faith." Ala. Code 1975, § 19-1-9.
We have carefully examined all the evidence presented by Heffner in opposition to the bank's motion for summary judgment and the applicable law, and we conclude that there was not a scintilla of evidence before the trial judge at the time he granted the bank's motion that the bank had either actual knowledge that Kathy Heffner was breaching her fiduciary duty, or that the bank had knowledge of such facts that paying the checks amounted to bad faith on the bank's part. The judgment of the trial court is, therefore, due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.